Harper v. Harper.

————◦•••◦————

HARPER, Plaintiff in Error, v. HARPER, Defendant in Error.

| | |
|---|---|
| 29 | 301 |
| 48a | 211 |
| 29 | 301 |
| 60a | 556 |

1. Where a wife seeks a divorce from her husband she must separate herself from his bed; she can not expect to maintain her suit and share his bed at the same time.
2. Courts will not grant divorces to those who, by a long course of ill-advised and imprudent conduct, have produced such a state of alienation of feeling as would, if unexplained, seemingly warrant a divorce.

*Error to Jackson Circuit Court.*

It is deemd unnecessary to set forth the facts more fully than they appear in the opinion of the court.

*Chrisman & Comingo* and *Smart & Sheley*, for plaintiff in error.

I. The charge of adultery made by a husband against a wife is such an indignity as will authorize a divorce. (19

20—VOL. XXIX.

Mo. 355 ; R. C. 1855, tit. Divorce ; 5 Blackf. 81.) Although plaintiff remained with defendant after the charges of infidelity, it does not amount to a condonation. (6 Mars. 69 ; 6 Barr, 449 ; Bishop on Mar. & Div. § 368, 371 ; 7 Paige, 60.) Before defendant could legally avail himself of any testimony amounting to recrimination, or tending to show it, he must specifically plead it. (Bishop on Mar. and Div. § 408 ; 4 Paige, 432.) The court, therefore, erred in receiving the testimony of Beamer and Twyman. Recrimination to be a bar must be such as to constitute a proper basis for a judicial decree. (10 Calf. 257 ; 12 Mo. 53 ; Bishop, § 407.)

*Hovey & Hicks*, for defendant in error.

I. Plaintiff was not the innocent and injured party. The evidence sustains the decree. (See 28 Mo. 592 ; 27 Mo. 383.)

SCOTT, Judge, delivered the opinion of the court.

This is a proceeding instituted by the plaintiff in order to obtain a decree from her husband, the defendant, from the bonds of matrimony.

From the zeal manifested by those engaged in the management of the cause, we infer it is one in which the parties feel a deep interest, and we have given it that deliberation its importance claims from us. This lady acted unwisely in placing herself under the direction and control of others in instituting this suit. She must have known that, in the event of such a proceeding, a separation from the bed and board of her husband was indispensably necessary. She could not expect to live in the house of a husband from whom she was seeking a divorce, and that, too, on the ground that he rendered her condition intolerable. If the husband's cruelty drives his wife from his house, the law sends her out with credit for all that may be necessary for a support according to her husband's state and expectations in life. Knowing this, how could she expect that the courts would not mistrust her sincerity when she complained that her husband

Harper v. Harper.

rendered her condition intolerable, if, when the officer of the law went with her process against her husband he should summon him at a late hour of the night from her bed. How so revolting a transaction occurred is nowhere explained. There is no pretence that there was any force or authority of the husband exerted in order to compel the stay of the plaintiff at his house.

We are not of the opinion that the plaintiff has made out a case for a divorce. She seems to have had an agency in bringing about the state of which she complains. That lively sensitiveness on the subject of her reputation for virtue hardly corresponds with the obstinacy of her conduct towards the object of her husband's jealousy. So keen a sensibility should have restrained her from showing any attentions to the individual of whom she knew her husband was suspicious. Her conduct, however innocent at first, was certainly unbecoming, after she was apprised of her husband's apprehensions, although they may have been ill-founded. He had a right to admonish her, and although there may have been no cause for his admonitions, yet she must have known that if she persisted in her course the suspicions against her would be heightened. Had there been such a state of mind between her and the object of her husband's fears as should only have existed, it does seem that after they were informed of the defendant's state, nothing should afterwards have been done that would serve to continue or strengthen his suspicions. A woman, sensibly alive to her reputation for virtue, would never persist in a course of conduct which she was aware excited suspicions against her in the minds of those to whom that virtue is dear. A married couple must yield a little to each other's inclinations, although they may appear somewhat unreasonable; and though there may be no criminality in refusing to do this, yet when, by obstinacy and non-compliance, an alienated state of mind is produced between them, they can not expect that the courts will lend too indulgent an ear to their applications for a divorce. Courts will not grant divorces to

those who, by a long course of ill-advised conduct, have produced a state of things which would seemingly warrant such a measure. These observations have been made, not with the view of making any insinuations against the virtue of the plaintiff, but as showing that, in our opinion, such indignities had not been offered to her by her husband as rendered her condition intolerable.

The evidence offered by the defendant and admitted against the objections of the plaintiff does not, in our opinion, affect the determination of the case. The suit of the plaintiff must have failed, although the evidence had been excluded.

Affirmed; the other judges concur.