Iva E. PRICE, Plaintiff-Appellant,

v.

Roy A. PRICE, Defendant-Respondent.

No. 7412.

Springfield Court of Appeals.

Missouri.

July 21, 1955.

James H. Keet, Springfield, for plaintiff-appellant.

Fred A. Moon, Springfield, for defendant-respondent.

STONE, Judge.

Plaintiff appeals from a judgment dismissing her amended petition for separate maintenance and granting a divorce to defendant on his cross-bill, and also from orders overruling plaintiff's pretrial and after-trial motions for allowances pendente lite. After averring in the amended petition that she and defendant had been married on May 1, 1951, and separated *on April 26, 1953*, plaintiff alleged that defendant had "offered such indignities * * * that she became justified in leaving," specifically stated the six indignities on which she relied, and then averred that *defendant had abandoned her "on or about September 23, 1953."* Her prayer was for separate maintenance only. In his answer, defendant admitted the marriage and separation, admitted the filing of a suit for divorce in Harrison, Arkansas, during December, 1953 (this being one of six indignities charged by plaintiff), denied other averments of the amended petition, and alleged that the judgment of the Circuit Court of Greene County, Missouri, on September 23, 1953, in a prior divorce suit between the same parties was res judicata as to the other five indignities charged in the instant case. Defendant's cross-bill, in which he sought a divorce, was predicated solely on the statutory ground of desertion. Section 452.010. (All statutory references are to RSMo 1949, V.A.M.S.)

In the first suit between the same parties instituted in the Circuit Court of Greene County on May 7, 1953 (hereinafter referred to as the first suit), the husband by his petition had sought a divorce for alleged indignities offered by the wife, and she by her cross-bill had sought a divorce for alleged indignities offered by him. Following trial, both the petition and the cross-bill were dismissed by the court. The four indignities charged in the wife's cross-bill in the first suit were four of the six indignities charged in her amended petition in the instant case.

■ Our Supreme Court has pointed out that divorce a vinculo matrimonii, i. e., absolute divorce, and a divorce a mensa et thoro, i. e., divorce from bed and board, now an action for separate maintenance [Pickel v. Pickel, 291 Mo. 180, 236 S.W. 287, 293], "are substantially indivisible portions of the one action for divorce" [Ellis v. Ellis, Mo., 263 S.W.2d 849, 853(3)]; and, every appellate court in this state has held that a wife cannot recover in an action for separate maintenance unless she makes such proof as would entitle her to a divorce if that were the relief sought.[1]

■■ The general rule that ordinarily a judgment in a former action between the same parties is conclusive not only as to all issues tried but also as to all issues which, in the exercise of reasonable diligence, might have been litigated therein [2] is applicable in divorce suits. Ackley v. Ackley, Mo.App., 257 S.W.2d 404, 407(5). Thus, the judgment in the first suit, in which each party had sought a divorce on the ground of indignities, was res judicata as to all known indignities prior thereto [Dawson v. Dawson, 235 Mo.App. 736, 145

---

1. Supreme Court—Ellis v. Ellis, Mo., 263 S.W.2d 849, 853(4); State ex rel. Fawkes v. Bland, 357 Mo. 634, 210 S.W. 2d 31, 35(3). St. Louis Court of Appeals—Thomason v. Thomason, Mo.App., 262 S.W.2d 349, 352(3); Dallas v. Dallas, Mo.App., 233 S.W.2d 738, 745(9); Dietrich v. Dietrich, Mo.App., 209 S.W. 2d 540, 544(6); Meredith v. Meredith, Mo.App., 166 S.W.2d 221, 223(1). Kansas City Court of Appeals—Glick v.

Glick, 226 Mo.App. 271, 41 S.W.2d 624, 626(2). Springfield Court of Appeals— Elsey v. Elsey, Mo.App., 297 S.W. 978, 979(3).

2. Custer v. Kroeger, 313 Mo. 130, 280 S.W. 1035, 1037(6), 44 A.L.R. 1328; Donnell v. Wright, 147 Mo. 639, 49 S.W. 874, 875(1); Meisel v. Mueller, Mo.App., 261 S.W.2d 526, 532(3); Miller v. Munzer, Mo.App., 251 S.W.2d 966, 971(6).

S.W.2d 436, 438(3); Hess v. Hess, 232 Mo.App. 825, 113 S.W.2d 139, 141(1), 142 (6, 7); Viertel v. Viertel, 99 Mo.App. 710, 75 S.W. 187, 189], and the finding that the wife was not entitled to a divorce in the first suit necessarily was an adjudication that, as of the date of judgment, i. e., September 23, 1953, she likewise had no right to separate maintenance predicated on constructive abandonment. Dallas v. Dallas, Mo.App., 233 S.W.2d 738, 745(10); Brady v. Brady, Mo.App., 71 S.W.2d 42, 47(6).

We have not overlooked the cases on which plaintiff leans heavily [Gillinwaters v. Gillinwaters, 28 Mo. 60, 61; Neff v. Neff, 20 Mo.App. 182, 190(3); Sutermeister v. Sutermeister, Mo.App., 209 S.W. 955, 956–957(2)], nor the recent case of Morgan v. Morgan, Mo.App., 278 S.W.2d 809, 811, in each of which appears a statement such as "(t)he conduct of a husband toward his wife may be such as would warrant her in leaving him, although it would not entitle her to a divorce." 28 Mo. loc. cit. 61. However, in the Sutermeister case, supra, upon which plaintiff places primary reliance, the opinion recites that the husband had been guilty of *"intolerable treatment, which was itself cause for divorce"* [209 S.W. loc. cit. 956(1)]; and, in the Neff case, supra, the wife "had been deceived into 'bonds of wretchedness and oppression' instead of justly anticipated happiness." 20 Mo.App. loc. cit. 188. And, conceding (without agreeing) that the quoted statement might not have been inappropriate under the facts of the cited cases, nevertheless we are of the opinion that nothing in the instant case should or does exclude it from operation of the firmly-established and controlling principle that a wife cannot obtain separate maintenance if she fails to make proof which would entitle her to a divorce,

To recover in a statutory action for separate maintenance [Section 452.130], the wife must show, by a clear preponderance of the evidence [Glick v. Glick, 226 Mo.App. 271, 41 S.W.2d 624, 626(3)], that her husband has abandoned her without good cause and that he has refused or neglected to maintain and provide for her. Luckett v. Luckett, Mo.App., 263 S.W.2d 41, 42(2); Herbig v. Herbig, Mo. App., 245 S.W.2d 455, 456(1); Knese v. Knese, Mo.App., 217 S.W.2d 394, 398(1). Since defendant admittedly failed to provide for plaintiff after their separation on April 26, 1953, only the element of abandonment is in issue here. Although it is said in cases tried on the theory of *constructive* abandonment (as the instant case was) that, when the husband's conduct has rendered his wife's condition unendurable, she may live apart from him without forfeiting her right to separate maintenance [Forbis v. Forbis, Mo.App., 274 S.W.2d 800, 807(29), and cases there cited], it should ever be borne in mind that the wife must establish such indignities as would entitle her to a divorce in a suit seeking that relief. Kendrick v. Kendrick, Mo. App., 251 S.W.2d 329, 333(4). See also cases cited in footnote 1.

Passing the obvious incongruity of plaintiff's position in charging abandonment *"on or about September 23, 1953,"* [3] the date of judgment in the first suit, when the parties admittedly separated on *April 26, 1953,* the constructive abandonment is, in any event, dependent upon proof of indignities *subsequent to September 23, 1953,* for, as we have seen, there was on that date a binding adjudication in the first suit that plaintiff was not entitled to a divorce on the ground of indignities, and thus necessarily not to separate maintenance for constructive abandonment prior to that date. The only two indignities charged in plaintiff's.

---

3. Since plaintiff's original brief contained no "point relied on" with respect to the order overruling her *after-trial* motion under Section 509.500 for leave to amend her amended petition by changing the date of abandonment alleged therein from September 23, 1953, to April 26, 1953, the propriety of that ruling is not before us. Supreme Court Rule 1.08; Gurley v. St. Louis Public Service Co., Mo., 256 S.W.2d 755, 756(1).

amended petition, which had not been alleged specifically in the wife's cross-bill in the first suit, were (1) that "defendant has failed and refused to support plaintiff; defendant has refused to live with plaintiff and refused to make a home for her" and (2) that during December, 1953, defendant filed a divorce suit in Harrison, Arkansas, "and attempted to obtain a divorce from plaintiff without giving plaintiff notice."

■ If the language in which the first of these indignities was alleged may be said to have charged an indignity subsequent to September 23, 1953, which is open to question [cf. Hess v. Hess, supra, 113 S.W.2d loc. cit. 142(6,7)], the evidence did not support it. Plaintiff left the home owned by defendant in Springfield on April 26, 1953, because, in her words, "he (defendant) pouted, and he was just hard to get along with; I had to do just as he said to get along with him." In her case in chief, plaintiff testified that "he hadn't spoke to me for three weeks" before she left; but, in rebuttal, she said that, on the evening before she left, defendant had accused her of improper relations with "every man in Springfield before I married him." Defendant professed not to know why his wife left. In any event, the parties agree that, *after April 26, 1953, neither spoke to or communicated with the other and neither sought reconciliation.* Upon trial, there was no suggestion or indication that either had any desire to live with the other after April 26, 1953. In answer to a direct question as to whether she had made any request for support, plaintiff said *"just what I have asked for here, in court."*

As to the other alleged indignity, the record shows that on October 3, 1953, ten days after entry of judgment in the first suit, defendant sold the household furniture and rented his home in Springfield; that on October 6, 1953, defendant left Springfield —"I figured on traveling"; that, having "traveled" no farther than Harrison, Arkansas, he "found an awful good place to board and room and * * * stayed there"; and that, although "I give up divorce when I first left" Springfield, he decided about

one month later that he would undertake to obtain a divorce and, on December 19, 1953, less than two and one-half months after leaving Springfield, filed a "complaint for divorce" in the Chancery Court of Boone County, Arkansas, in which he sought a decree on the ground of indignities. On December 30, 1953, defendant's sister wrote plaintiff, admittedly at defendant's request, that "Roy ask me to write you and tell you if you wouldn't bother him about the divorce and not go through your lawyer he would give you $100." This "offer" not having been accepted and the wife's attorney having contacted the Arkansas court, the husband dismissed his Arkansas suit because, as he said, "I just got disgusted with it"—"I just didn't want to fool with it."

■ Defendant's testimony about his abortive effort to obtain an Arkansas divorce lacks the "naturally compelling ring of sincerity" [Clemens v. Clemens, Mo., 235 S.W.2d 342, 346], and we are not so naive as to be persuaded by it. But, a decree of divorce, and likewise a judgment for separate maintenance predicated on constructive abandonment, cannot rest on one indignity [Cadenhead v. Cadenhead, Mo.App., 265 S.W.2d 426, 435(2); Chapman v. Chapman, Mo.App., 230 S.W.2d 149, 151(1)] or, for that matter, on occasional acts or words. Hoffman v. Hoffman, Mo. App., 224 S.W.2d 554, 561(3). And, assuming that the Arkansas fiasco was established as an indignity, plaintiff is left with proof of only that one indignity subsequent to September 23, 1953. For, the evidence with respect to the only other alleged indignity *perhaps* triable herein, i.e., defendant's refusal to support, live with and make a home for plaintiff, did not establish it as an indignity in the statutory sense. Obermire v. Obermire, Mo.App., 232 S.W.2d 205, 208(4). It follows that we are of the opinion that the judgment of dismissal of plaintiff's amended petition should be affirmed.

■ Turning to plaintiff's complaint that the trial court erred in granting a divorce to defendant on his cross-bill, we observe first that Section 452.050 provides

that "No person shall be entitled to a divorce * * * who has not resided within the state one whole year next before filing of the petition, unless the offense or injury complained of was committed within this state, or while one or both of the parties resided within this state; provided, however, that when the plaintiff shall have resided within this state one whole year next before the filing of petition and the defendant shall plead and prove sufficient facts * * * which shall entitle such defendant to a divorce, the same shall be granted * * *." It has long been settled in Missouri that a petition for divorce, which does not contain an averment of one of the jurisdictional requirements stated in Section 452.050, is fatally defective and will not support a judgment against direct attack on appeal.[4] Since a cross-bill is considered in the same light and is governed by the same rules as a petition [Pike v. Pike, 239 Mo.App. 655, 193 S.W.2d 637, 639(1); Phelps v. Phelps, Mo.App., 246 S.W.2d 838, 842(3)], it seems never to have been questioned but that, as this court held in Butler v. Butler, Mo.App., 252 S.W. 734, 735(3), "the cross-bill states no cause of action of which the court has jurisdiction" when there is no allegation in the cross-bill of one of the jurisdictional requirements of Section 452.050.

■ The only allegation in defendant's cross-bill pertaining to the residence of either party was that "defendant * * * is a resident of Greene County, Missouri." There was no averment that "the offense or injury complained of was committed within this state, or while one or both of the parties resided within this state"; and, the statutory proviso applicable, by its terms, only "when the plaintiff shall have resided within this state one whole year next before the filing of petition" [Section 452.050] is not applicable in the instant case, since plaintiff was a resident of Wichita, Kansas, from May 10, 1953, to May 9, 1954, and had not resided in Missouri for one year prior to the filing of her original petition herein on June 3, 1954. Thus, defendant's cross-bill stated no claim "of which the court (had) jurisdiction" [Butler v. Butler, supra, 252 S.W. loc. cit. 735] and the decree of divorce to defendant on his cross-bill cannot stand.

■ In the interest of minimizing litigation, we express our further opinion that, on the evidence, defendant was not entitled to a divorce on the statutory ground of desertion. To prove desertion, within the meaning of Section 452.010, three elements must be established, namely, cessation from cohabitation without reasonable cause for one year, an intention on the part of the deserter not to resume cohabitation, and the absence of consent to the separation on the part of the deserted.[5] The importance of the third element is attested by numerous holdings that a spouse, who consents to or acquiesces in separation from the other, may not have a divorce on the statutory ground of desertion.[6] In the instant case, defendant testified that plaintiff "was a-fussing" with him shortly before she left "because I wouldn't ask her to stay," and the record is clear that defendant offered no objection to or complaint about plaintiff leaving. He did not seek reconciliation with his wife "because I didn't want it, for several reasons." We think that "(n)o fair mind can weigh this evidence and not conclude at once" that defendant welcomed and acquiesced in the separation. Plymate v. Plymate, Mo.App., 180 S.W. 29, 30(2). Wholly aside from the

4. Cheatham v. Cheatham, 10 Mo. 296, 299 (2); Phelps v. Phelps, Mo.App., 246 S.W.2d 838, 841(2); Gooding v. Gooding, 239 Mo.App. 1000, 197 S.W.2d 984, 986(1); Barricelli v. Barricelli, Mo.App., 300 S.W. 1023; Gordon v. Gordon, 128 Mo.App. 710, 107 S.W. 410.

5. Crum v. Crum, Mo.App., 217 S.W.2d 715, 717(1); Parsons v. Albertson, Mo.App., 31 S.W.2d 211(1); Hall v. Hall, 77 Mo.App. 600, 607(2).

6. Nolker v. Nolker, Mo., 257 S.W. 798, 803(8, 9); Simpson v. Simpson, 31 Mo. 24; Nicholson v. Nicholson, 214 Mo.App. 570, 264 S.W. 82, 85–86(8); Creasey v. Creasey, 168 Mo.App. 68, 151 S.W. 219, 227–228(6–8); Boos v. Boos, 88 Mo.App. 530, 533; Rodgers v. Rodgers, 84 Mo. App. 197; Davis v. Davis, 60 Mo.App. 545, 554–555(1); Droege v. Droege, 55 Mo.App. 481, 485–487; Gilmer v. Gilmer, 37 Mo.App. 672, 675; Dwyer v. Dwyer, 16 Mo.App. 422, 427–428(1).

sufficiency of his pleading, a divorce should not have been granted to defendant on the ground of desertion.

Plaintiff's motion for alimony pendente lite, suit money and attorney's fee theretofore filed and overruled (apparently without hearing) during October, 1954, was renewed, by leave of court, prior to trial on November 12, 1954. Plaintiff's after-trial motion for allowances on appeal was timely filed and overruled in the circuit court, and another motion for allowances has been filed by plaintiff in this court. Since the rule *in actions for separate maintenance* appears to be that allowances pendente lite are not to be ordered until the wife makes a *prima facie* showing that she has a good and meritorious claim and is entitled to the relief sought[7] (although no one has suggested why the rule in actions for separate maintenance should differ from that in divorce suits and we neither purpose nor desire to strengthen it by reiteration here), and since plaintiff's pretrial motion for allowances in this suit was taken with the case and was ruled on the evidence adduced upon trial, we would hesitate to disturb the order overruling the *pretrial* motion, if only prosecution of plaintiff's claim for separate maintenance were involved.

However, plaintiff's motions also requested allowances for defending against defendant's cross-bill. The rule in divorce suits is that a motion for allowances pendente lite, although incidental to the principal proceeding, is nevertheless a separate and distinct matter resting on its own merits [Crooks v. Crooks, Mo.App., 197 S.W.2d 686, 688–689(4); Hall v. Hall, Mo. App., 179 S.W. 738, 739(2, 3)], and that, in determining such motion, the court should not consider the merits of the case other than to ascertain whether the action has been instituted in good faith. Brinker v. Brinker, 360 Mo. 212, 227 S.W.2d 724, 727 (8); Downing v. Downing, Mo.App., 279 S.W.2d 538, 539(1); Gregg v. Gregg, Mo. App., 272 S.W.2d 855(1). The broad dis-

cretion of the trial court in the making of allowances in divorce suits is to be exercised in the light of the wife's necessities and the husband's ability to pay. Padgett v. Padgett, Mo.App., 231 S.W.2d 207, 211(5); Shepard v. Shepard, Mo.App., 194 S.W.2d 329, 330 (2). The test as to whether such allowances should be made is whether the wife is possessed individually of sufficient means to prosecute or defend the action, as the case may be [Patterson v. Patterson, Mo. App., 215 S.W.2d 761, 767(9); Baer v. Baer, Mo.App., 51 S.W.2d 873, 880(14)]; and, insofar as the husband's ability to pay permits [Dagley v. Dagley, Mo.App., 270 S.W.2d 553, 559(8); Schwent v. Schwent, Mo.App., 209 S.W.2d 546, 548(5)], any such allowances for suit money and attorney's fees should be in sufficient amount to enable the wife to prosecute or defend the action, in an efficient manner, to a conclusion. Brinker v. Brinker, supra, 227 S.W.2d loc. cit. 727(7). It has been said pointedly that, whether guilty or innocent, the wife has a right to prosecute or defend an action for divorce and that, if she is without means of her own, the husband should be ordered to pay reasonable allowances for that purpose [Burtrum v. Burtrum, Mo.App., 200 S.W.2d 80, 82(1); Scism v. Scism, 184 Mo.App. 543, 167 S.W. 455, 456; Libbe v. Libbe, 166 Mo.App. 240, 148 S.W. 460, 463(6)], and in similar vein that, unless it clearly appears that her appeal is without merit [Rosenfeld v. Rosenfeld, 63 Mo.App. 411, 412–413(1)], a wife should not be deprived of the right to means for prosecuting an appeal, simply because the court has found her to be the guilty party. Crooks v. Crooks, supra, 197 S.W.2d loc. cit. 689; Zerega v. Zerega, Mo.App., 200 S.W. 700, 701(3); Libbe v. Libbe, supra, 148 S.W. loc. cit. 463(6).

No effort was made to contradict or impeach plaintiff's testimony that her last employment was three months prior to trial as a cook in a rest home at a wage of $19.50 per week; that she has had arthritis since 1946—"I can't stand on my legs too

---

7. Dietrich v. Dietrich, Mo.App., 209 S.W. 2d 540, 542(1); Silverman v. Silverman, Mo.App., 95 S.W.2d 1237, 1238(3); Mc-

Pheeters v. McPheeters, 207 Mo.App. 634, 227 S.W. 872, 873–874(2).

long"; that her health at the time of trial was "not good"; and, that her material possessions were limited to her clothing, an "old radio," $70 in the bank, $20 in her purse, and a note for $100 signed by a brother-in-law. On the other hand, defendant testified that he owned a house in Springfield valued at $5,000 to $6,000 and rented at $50 per month; that he has drawn "a disability retirement" of $56 per month for 12 or 13 years (the nature and extent of the "disability" not being shown); that he owned and operated for pleasure purposes a 1949 Chevrolet automobile which took "a lot" of his income—"I think anybody knows that"; and that, at the time of trial, he had $207 in the bank and $89 on his person. Bearing in mind also plaintiff's professed intention to "travel" when he left Springfield in October, 1953, and the fact that he apparently did not regard his abortive Arkansas effort as financially onerous although it involved payment of about $100 in fees and residence in another state for about five months, we think it clear that the wife should have reasonable allowances for suit money and attorney's fees for defending against defendant's cross-bill both in the circuit court and on appeal. Jones v. Jones, Mo.App., 164 S.W.2d 162, 163(7); Speiser v. Speiser, 188 Mo.App. 328, 175 S.W. 122, 126(5).

We have no jurisdiction to order allowances on plaintiff's motion filed here [State ex rel. Clarkson v. St. Louis Court of Appeals, 88 Mo. 135; McCormack v. McCormack, Mo.App., 238 S.W.2d 858, 864(11, 13); Nicholson v. Nicholson, 214 Mo.App. 570, 264 S.W. 82(1); Creasey v. Creasey, 175 Mo.App. 237, 157 S.W. 862, 863–864(2)]; and, on the inadequate record before us, any attempt to determine allowances in the exercise of our function of appellate review of the orders overruling plaintiff's motions in the trial court would, of necessity, be arbitrary. Simon v. Simon, Mo., 248 S.W.2d 560, 568(8). Accordingly, it is the judgment of this court that plaintiff's motion for allowances filed in this court be overruled; that the judgment of

dismissal of plaintiff's amended petition be affirmed; that the decree of divorce to defendant on his cross-bill be set aside; that the orders of November 20 and December 15, 1954, overruling plaintiff's motions for allowances be set aside; and, that the cause be remanded with directions to enter a judgment of dismissal of defendant's cross-bill and to order payment by defendant of such allowances for suit money and attorney's fees for defending against defendant's cross-bill as the court may find to be proper upon further proceedings not inconsistent with the views expressed herein.

McDOWELL, P. J., and RUARK, J., concur.